**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**RLS (USA) INC.**,

      Plaintiff,

v.                                                                           Case No. 8:23-cv-1044-WFJ-UAM

**CURIUM US LLC**,

      Defendant.

_____/

## **ORDER**

Before the Court is Defendant Curium US LLC's ("Curium") Motion to Dismiss (Dkt. 44) Plaintiff RLS Inc.'s ("RLS") First Amended Complaint (Dkt. S-24). RLS has responded in opposition (Dkt. 51), and Curium has not replied. Upon careful consideration, the Court grants-in-part and denies-in-part Curium's Motion and transfers this case to the Northern District of Illinois.

## **BACKGROUND**

RLS owns and operates nuclear pharmacies throughout the United States. Curium produces and supplies radiopharmaceutical products. Since 2021, Curium has supplied over thirty of RLS's pharmacies[1] with products ranging from

---

[1] A complete list of RLS pharmacies supplied by Curium can be found at Dkt. S-24-1 at 2–3. Of the thirty-one RLS pharmacies listed, three are located in Florida. *Id.* The other twenty-eight are dispersed among eighteen different states.

Technetium-99m Generators to Sodium Iodide I-23 Capsules. The two are now suing each other in the Middle District of Florida and the Northern District of Illinois for various contract-based claims arising from a 2022 amendment to a 2021 pharmaceutical supply agreement.

## I.    Factual History

On January 1, 2021, RLS and Curium entered into a supply contract (the "Original Agreement") under which RLS agreed to purchase a number of different radiopharmaceutical products manufactured by Curium. Dkt. S-24-1. Section 7 generally provided that specific products were subject to a committed purchase volume ("CPV"). *Id.* at 5–7. If RLS failed to meet the CPV for any specified product in a given calendar year, Section 7(e) provided that RLS would be liable for liquidated damages in the form of the CPV price minus the price paid by RLS for the volume of product actually purchased that year. *Id.* at 6–7.

On January 21, 2022, following an amendment to the Original Agreement's CU 64 Dotatate Order Cancellations and Credits provision, the parties effectuated a second and more substantial amendment to the Original Agreement (the "Amended Agreement"). Dkts. S-24-2 & S-24-3. Among other things, the Amended Agreement provided that, pending approval from the U.S. Food and Drug Administration ("FDA"), Technetium Tc 99m pentetate injection ("DTPA") and Ioflupane I-123 injection ("Ioflupane") would be added to the list of CPV Products included under

Section 7 of the Original Agreement. Dkt. S-24-3 at 1–3. RLS also agreed to an increased Tc-99m Generator ("Generator") CPV in the event that it did not satisfy the Buyer Financing Contingency established in Section 6(b) of the Amended Agreement. *Id.* at 3–4. Section 4(b) of the Amended Agreement, however, obligated the parties to "meet periodically to review market fluctuations, customer demands, shortfalls in supply" and "make adjustments agreed to in a duly executed amendment." *Id.* at 3.

Following FDA clearance, RLS began distributing Ioflupane in its various pharmacies. Dkt. S-24 at 12. It was not long before RLS determined that it could not meet the Ioflupane CPV established by the Amended Agreement. *Id.* RLS consequently requested that Curium meet and discuss a CPV adjustment pursuant to Section 4(b). According to RLS, "Curium unreasonably failed and refused to agree to any adjustment" when presented evidence of limited customer demand, changes in market conditions, and supply issues. Dkt. S-24 at 14. RLS further claims that Curium has failed to acknowledge RLS's satisfaction of the Buyer Financing Contingency concerning Generator CPVs. Dkt. S-51 at 6.

On May 12, 2023, RLS notified Curium of its supposed breaches of the Amended Agreement, triggering a thirty-day cure period under Section 23(a) of the Original Agreement. *Id.* Curium failed to cure or otherwise change course. As a

result, RLS maintains that the parties' contractual relationship terminated on June 14, 2023. *Id.*

## II.     Procedural History

On May 11, 2023, RLS filed suit against Curium in this Court. Dkt. S-1. Curium filed suit against RLS in the Northern District of Illinois approximately one month later. Dkt. S-32-3. Now proceeding on its First Amended Complaint, RLS asserts six claims against Curium: Count I—breach of contract for failing to adjust RLS's Ioflupane CPV; Count II—breach of the implied covenant of good faith and fair dealing for failing to negotiate an adjustment to RLS's Ioflupane CPV in good faith and taking actions to hinder RLS's ability to meet its CPV; Count III— declaratory judgment concerning RLS's Generator CPV; Count IV—declaratory judgment concerning the punitive nature of the subject liquidated damages provisions; Count V—negligent misrepresentation concerning Curium's statements relating to the anticipated date of FDA approval for DTPA and Ioflupane; and Count VI—mutual mistake, in the alternative, concerning the same. Dkt. S-24 at 10–31.

On August 4, 2023, Curium filed a Motion to Dismiss RLS's First Amended Complaint. Dkt. 44. Curium argues that the Court lacks personal jurisdiction over Curium, that the Middle District of Florida is an improper venue, and that RLS has failed to state a claim. *Id.* at 7–43. RLS disagrees on each point. Dkt. S-51. On August 14, 2023, the Court held a hearing on these matters.

## DISCUSSION

The Middle District of Florida is an improper venue for this dispute. Under 28 U.S.C. § 1391, venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

As a Delaware limited liability company with its place of business in St. Louis, Missouri, Dkt. 44-1, Curium does not reside in the Middle District of Florida. It follows that RLS has the burden of showing that a substantial part of the events or omissions giving rise to the claims at issue occurred in the Middle District of Florida. § 1391(2); *See Palmer v. Dau*, No. 610-CV-248ORL-10KRS, 2010 WL 2740075, at *1 (M.D. Fla. July 12, 2010) (finding that "[o]n a Rule 12(b)(3) motion to dismiss, the plaintiff has the burden of showing that venue in its chosen forum is proper").

RLS has not met this burden. "Substantiality is a qualitative inquiry, and is determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum." *TrakSouth Civ. Contractors, LLC v. Branch Banking & Tr. Co.*, No. CV 113-197, 2014 WL 12936989 at *3 (S.D. Ga. Aug. 4, 2014) (citations and internal quotations omitted). "Only the events that directly give rise to a claim are relevant." *Jenkins Brick Co. v. Bremer*, 321 F.3d

1366, 1371 (11th Cir. 2003). Events that lack a close nexus with the cause of action are wholly irrelevant. *See Kapordelis v. Danzig*, 387 F. App'x 905, 906 (11th Cir. 2010).

Here, RLS's claims primarily revolve around the execution of the Amended Agreement and Curium's purported failure to negotiate an adjustment to the Ioflupane CPV provision contained therein. Dkt. S-24 at 10–31. RLS presents no actions or omissions by Curium in the Middle District of Florida that gave rise to its claims surrounding either of these issues—let alone a substantial one. Indeed, there is no indication that the Amended Agreement was executed in Florida or that the parties' failed CPV adjustment negotiations took place here. In short, none of Curium's activities in Florida share a close nexus with these causes of action. They are therefore irrelevant in relation to venue considerations.

The allegations surrounding RLS's negligent misrepresentation claim (Count VI) do not change the Court's analysis. RLS generally alleges that Curium made a number of false representations that induced RLS to agree to certain provisions of the Amended Agreement. Dkt. S-24 at 27–30. As a basis for proper venue, RLS specifically points to the alleged misrepresentations made by Curium employee Bill Sones while residing in Florida. *Id.* at 28. These alleged misrepresentations, however, cannot be considered substantial events that gave rise to Count VI. Mr.

6

Sones' statements occurred *after* the execution of the Amended Agreement.[2] *Id.* It is consequently unclear how RLS "reasonably relied on [Mr. Sones'] false representations, both in entering into the [Original] Agreement and the [Amended Agreement]." *Id.* at 29. Regardless, RLS has failed to demonstrate that a substantial part of the events or omissions giving rise to its claims occurred in the Middle District of Florida. Venue is improper here.

Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." The Court finds that it is in the interest to justice to transfer this case to the Northern District of Illinois where the parties are currently engaged in a separate lawsuit over the same contractual provisions. RLS's claims in the instant case are compulsory counterclaims that could have been brought there, where Curium has subjected itself to personal jurisdiction and RLS is at home. The parties, moreover, have expressed their preference for such transfer over dismissal.

---

[2] It is also worth noting that Mr. Sones' alleged representations concerning pending FDA approval of Ioflupane and DTPA could not have induced reliance that led to continued contract performance concerning Ioflupane and DTPA. At the point the alleged misrepresentations were made, the contingency triggering RLS's purchase requirements of these products (FDA approval) had not yet materialized.

## CONCLUSION

Venue is improper. The Court expresses no opinion on the personal jurisdiction or dispositive issues raised by Curium in its Motion to Dismiss.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Curium's Motion to Dismiss (Dkt. 44) is **GRANTED-IN-PART and DENIED-IN-PART**.

(2) This action is **TRANSFERRED** to the United States District Court for the Northern District of Illinois.

(3) The Clerk is directed to effectuate transfer and close this case.

**DONE AND ORDERED** at Tampa, Florida, on August 15, 2023.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record